GHALEHMAMAKAEI Good morning, Your Honor. May it please the Court, my name is Laura Weissman, I represent Petitioner Osana Mansourian. I'd like to reserve two minutes of my time, if I might. The government suggests we're here today asking this Court to re-litigate a made-up story. That's not why we're here. We're here asking this Court to review the immigration judge's decision denying relief to determine whether the immigration judge correctly applied the law and based his factual findings on substantial evidence. As the record shows below, that didn't happen here. Rather, the order in or below reflects significant legal, factual, even logical error and is in no means supported by substantial evidence. How did the immigration judge err? First, the immigration judge concluded that certain corroborative evidence was reasonably expected without ever first addressing the issue of whether Mrs. Mansourian was credible. If her testimony was credible, then under well-established Ninth Circuit law, there was no basis to demand further corroboration from her. The Court applied an erroneous legal standard and then failed to meet that standard with substantial evidence. MR. GARRETT Maybe you can help me. I found the immigration judge's comments to be ambiguous at best. It seemed to me that what he was saying, although he certainly doesn't say it, is that he had problems with her credibility, but also, basically, I think he's saying, I just don't find, I'm not convinced by the evidence that she does offer that she's met her burden. Am I reading that correctly? MS. BENTON Well, I would certainly agree with Your Honor that the decision is ambiguous. And this Court's case law makes very clear that where a judge is going to draw an adverse credibility determination, where it's going to deem somebody sufficiently not credible to deny their claim, it must be done on an explicit basis. And this Court has reaffirmed that time and time again, and suggested, for example, in Kalubi, that this Court's precedent applies on that issue, and the courts may not like the batting averages they have on credibility determinations, but a court has to be explicit. And saying that somebody isn't entirely credible or sufficiently credible does not meet this Court's Ninth Circuit standard. Now, assuming that the judge was attempting to communicate some sort of disbelief based on hearing difficulties, memory problems, and was intending to draw some sort of adverse credibility determination, it doesn't rest on substantial evidence. MR. CLEMENT Okay. Let me just say, assume hypothetically I agree with you that he's ambiguous with regard to the credibility finding. But I'm looking specifically at, I guess, I think it's ER 85, page 6 of the integration judge's ruling, and towards the bottom of the page 3 it says, but there simply is not sufficient proof of a valid asylum claim in this hearing. May I read that statement to mean, even if I find her credible, I'm simply deciding as the determiner of the burden of proof that the alien simply hasn't met it yet? MS. BENNETT Well, I think the immigration judge does ultimately go on to accept the evidence. In fact, he says so when he moves on into the analysis of whether she'd shown persecution on account of a statutorily protected ground. But this Court MR. CLEMENT So your position is that that's a pretty clear statement, at least with regard to the sufficiency of the evidence. Where would you point me to in his decision where you say he then rules inconsistently? MS. BENNETT Well, let me actually still focus on the Court's question about the statement on page 85 of the record. The immigration judge says there's not sufficient proof. This Court may examine the reasons why the judge determined there was not sufficient proof, and it must determine whether there was substantial evidence for those reasons and whether that determination was made consistent with this Court's standards. The determination that Mrs. Mansourian had not shown sufficient proof to make that her claim, one, did not apply the correct legal standards of this Court, and two, did not support that finding with substantial evidence. For example, the immigration judge, in part, rested his decision on Mrs. Mansourian's inability to provide a specific time frame for the situation in which she and her daughter were taken into custody and her daughter was killed. And the Court said that is not sufficient evidence in fact, that's the only reason identified. When he goes on to make the statement, I find her testimony not sufficiently detailed and credible to be the sole evidence in case. The sole reason he provides is that she wasn't able to provide a specific time frame. Well, in order for that finding for a perceived inconsistency or a perceived failure proof to withstand this Court's appellate review, first of all, it has to be supported by substantial evidence. There were no discrepancies in the record with respect to the time. Now do we then have to go the next step and find that the what evidence there is compels the contrary conclusion? There's two layers of analysis. With respect to whether the correct legal standard was applied, that is reviewed de novo. That is not a deferential standard, and I'll show why it was legally erroneous. With respect to substantial evidence, the evidence does have to show that a reasonable fact finder would be compelled to find that that finding of fact was erroneous. Let me ask you a question, if I may. Let's suppose you're correct that the credibility finding was flawed, and we take as true her testimony and that she's established past persecution. Okay? What do we do then? Do we have to remand it for the V.I.A. to determine whether the presumption of future persecution has been rebutted by the government, or where do we go from there? Your Honor, if this Court found that the testimony was sufficient to establish past persecution, and I believe that the evidence was, she testified that she... Right. We assume that she's established past persecution. If we assume that, then this Court, I believe, has to apply the presumption that Mrs. Mansourian has a well-founded fear of future persecution, particularly coupled with the evidence in the record that was not addressed. There were six exhibits admitted into the record. The judge addressed two in his opinion and ignored the evidence, showing why that presumption is further supported by the evidence. Does the government get a chance, then, to show that the presumption has been rebutted? Do they get a chance to go back and do that? No, Your Honor. And this case law makes clear in cases, for example, like Babala, that this Court does not get to now go back and, Nadam Mamouzian, this Court does not get to go back and address changed country conditions such that she would no longer have a well-founded fear, because they didn't argue it below either in front of the immigration judge or in front of the Board of Immigration Appeals. So they have to take the record as it stands. Exactly. The same way that the petitioner has to take the record as it stands, the government has to take it. Moreover, they cannot argue reasons outside the record or beyond the reasons identified by the immigration judge under the doctrine of SEC versus Chanery. I'd like to move you, if I can, while you still have some of your direct time left. Looking at your reply brief, page 5, footnote 3, you're dealing with the cat claim there, and you argued that the cat claim was not dead because this Court's case of Zara against Ashcroft was not then final. Now, the mandate issued in that case on the 26th of January, would you now agree that the cat claim is over? Your Honor, I do agree that Zara seems to dispose of our arguments. I would note, however, that there is a subtlety that I think has not been fully fleshed out in the case law. Cat is not actually a form of relief. The form of relief is withholding of removal or withholding of deportation. It does, however, have very different evidentiary standards, and the Court has treated those as analytically separate. Cat relief was not specifically addressed below, and I do find, unfortunately, that Zara disposes of that issue. But I do believe, getting back to the question that Judge Silverman posed to me, assuming that she'd shown a well-founded fear of persecution, she's still eligible for withholding, because if the persecution she suffered was such that her life or liberty was at issue, not only does she have a presumption of a well-founded fear of future persecution, she's also entitled to a presumption that her life or liberty would be threatened upon her return to Iran. And that presumption also has to be rebutted. Now, certainly under Ventura, the Supreme Court's Ventura decision, the case would have to be remanded to determine whether asylum should be granted in the exercise of the Attorney General's discretion. But as to whether country conditions have changed to such an extent that she no longer has a well-founded fear, that issue is directly controlled by cases such as Naddam, Babala, Mammouzian. It doesn't need to include such an analysis on remand. Thank you very much, Ms. White. You said you wanted to reserve some time. Thank you, Your Honor. You've got about a minute left. Good morning. Good morning, Your Honor. I may have a few seconds to set up here. Sure. I promise I don't have demonstrative evidence. Good morning, Your Honors, and may it please the Court. My name is Jeffrey Bernstein, and I represent the Attorney General in this case. I guess I first want to clear up something, some questions the Court had regarding what happens if you vacate an adverse credibility determination that may or may not have happened. Well, that subject is analyzed extensively in our brief, and the nub of it is that the immigration judge never addressed persecution, never addressed the question of whether or not Ms. Gallamack, I, or Mansourian was persecuted. The immigration judge and the BIA never addressed that, so if the Court believes that the decision of the Board is defective in some way and must be vacated, then the matter must, under the Supreme Court's decision, be remanded so that the agency can make all findings on the asylum claim, pass persecution. But that's true where there's specific credibility findings which we reverse, for example. Then we send it back and say, okay, now you've got to consider that she's credible. Since you didn't, you need to relook at it. Here, if we say there was no adverse credibility finding, then we don't get to that first hurdle, do we? Well, you still have to, the service still has to determine whether or not, on the testimony of record, whether or not that evidence establishes persecution. There's simply not sufficient proof of a valid asylum claim in this hearing. Didn't the IJ say what had to be said right there? That looking at the record, there's not enough proof. So there was a finding. No showing of persecution. No, Your Honor. The judge simply found that there wasn't enough evidence to enable her to meet her burden of proof. That finding does not... Isn't that a finding? In other words, if you go to trial, do your best shot, put the evidence in,  It's not a finding that encompasses a determination of persecution, whether or not the evidence... That can't be right. I mean, an asylum claim to be valid requires a showing of past persecution, does it not? It does, but the only thing the judge said is, I don't find your evidence sufficient to meet your burden of proof. He didn't go any further than that. He didn't say, assuming that... What are the elements of an asylum claim? It includes a showing of past persecution based upon the five protected grounds under the Refugee Act, right? Those are the elements. That's correct, yes. And isn't he saying, I just don't find, based on the evidence that was adduced here, that she meets her burden? That's a burden of proof issue. It's not a commentary on the evidence itself. Well, it is a commentary. It's a commentary on the failure of the evidence, is it not? It's a failure of the evidence, as he stated, for the many reasons he stated, not because it, if believed, didn't constitute persecution. Let me draw you an analogy. If the government was trying a criminal case, and it has the burden of proof beyond a reasonable doubt to establish each of the elements of the crimes, if the fact finder decides that the government hasn't met its burden of proof, that means that the evidence that was introduced at the trial simply did not establish, by proof beyond a reasonable doubt, each and every element of the offense. Isn't that what he's saying? No, this isn't a criminal case. This is a case where the immigration judge... It's a burden of proof issue. Mr. Bernstein, how can it be different? I mean, immigration cases aren't different on burdens of proof, are they? Well, they're certainly not criminal cases. And, you know, I'm not a criminal lawyer, so I don't know the various intricacies of criminal law. But all I'm saying is he denied it on the basis that the evidence wasn't sufficient because it wasn't credible. He did not go ahead and say... That's not what he said. He said there's not sufficient proof of a valid assignment. Because... He didn't say anything about credibility. Well, he did. He said because the evidence... That's the sole evidence in the case. That's all we found. Okay, so let's assume it's an adverse credibility finding for the sake of discussion. And let's assume the adverse credibility finding is wrong. So we take her story as true. Well, you don't take her story as true necessarily. That's something for the fact finder to determine. But we're saying he's wrong in saying it's not believable, but the converse is that it's believable. Well, I don't think that they're mutually exclusive. I don't think just because... Well, it can either be one or the other. I mean, there's not a third ground, is there? Kind of like no determination? Kind of a draw? Well, the only thing... If you find her credible, you find not that necessarily her story is true, but certainly that she believes her story is true. And it depends on all the other evidence... That's a very strange definition of credibility. That's a subjective definition. We got an objective determination by a fact finder here as to the sufficiency of the proof. It doesn't have anything to do with her state of mind. Let me... I didn't, but I'd like to move off to the Sidhu case because this is really a Sidhu case and it's really a question of whether or not corroborative evidence is sufficient. Let me ask you another question that's bothering me. Tell me practically what happens if you win here. Does she get removed to Iran? If the order of removal is affirmed, then you've got a final order of removal which can be executed. Do I understand correctly that nobody's going back to Iran any time? I don't know. I have no idea whether or not Iran accepts people back. I just have no idea. If you don't know, in the Office of Immigration Litigation, as the representative of the Attorney General, who do we ask? Well, an issue in... I'm not prepared for it because an issue in this case is not what happens... You're asking us to grant you relief that cannot effectively be accorded here. If we just enter this order and it's meaningless, this poor woman just... What's she going to do, sit in an immigration jail? I trust the government is not seeking to incarcerate an 89-year-old. The government isn't, but again, if the court has some evidence that we can't deport people to Iran, I'm happy to go back and get that question answered for you. I'm just surprised that you don't know the answer to that question. I would have expected you to know that. I'm just wondering about the practical effect of this, or whether... We talked before coming out, whether the government might be interested in mediating this in some way, if, as a practical matter, she's not going anywhere, no matter what we decide. Well, counsel certainly has approached oil for mediation, but oil is not... Oil only represents the attorney general in defending the BIA's decision. We don't make decisions with respect to whether or not the IMF... So you won't talk to the Department of Homeland Security and urge them as your client agency to have a heart here in this case? If we think that the determination below is supported by substantial evidence, then we defend that decision, Your Honor. We don't get into the issues of what happens if the decision is affirmed. Suppose we give you a ruling that says we don't think there is substantial evidence here. Would you reconsider your position? Well, I don't think oil is the proper component of the government to do that. So the attorney general doesn't have a heart? Your Honor... I mean, you're the only representative we have. You are the representative of the sovereign. And we were asking you some very practical questions here, and I'm getting the bureaucratic response. It's kind of this sort of thing. I'm happy to go back at the court's request or order to look into the matters that you request me to look into. I'm happy to do that. I don't want to pass the buck. Judge Silverman simply asked me what the procedure was, and that is not a component that we in oil engage in. And, you know, I have no answer to that. I'm not trying to be... No, I understand. I'm just disappointed. I can tell you from experience that several months ago a panel I was on suggested to oil that mediation be considered. And it took, as I recall, about 60 days for the lawyer to go back through channels and get an agreement that oil would mediate that dispute. Your Honor, the government does not ignore orders of courts. That was a suggestion. Well, the government generally doesn't ignore strong suggestions either. So obviously, you know, we're here to help out in any way the court thinks that we can. And as I indicated to Judge Silverman and Judge Tolman, we're happy to do that. But I'd like to talk about SIDHU because SIDHU is really essentially this case. In SIDHU, this court determined that where there were questions about the credibility of an applicant for asylum, that the immigration judge, actually the board in that case, was certainly within their right to insist on corroborative evidence. And in fact, the only evidence, the only component of the board's two-part credibility determination in SIDHU that was affirmed was the board's determination that the failure to come forward with easily available or available evidence was in fact an adverse, was an indicia of credibility. But in SIDHU, if I remember the facts, I think that's a Judge Wallace decision. Wasn't the factual distinction that there were relatives living in the United States from whom the corroborative evidence could easily have been obtained? Whereas here, as I understand the record, the problem is that the alien's family was all in Iran. Well, that was true in SIDHU. But in SIDHU, they relied on the court's decision in Mahia Payens v. INS. And in that decision, there was evidence, they required corroborative evidence of membership in, I believe, Jehovah's Witnesses Church. And they suggested that that evidence certainly was available from a foreign country. So you combine those two cases, and you have this case. So do you agree with my characterization of the facts in SIDHU that it does make a difference whether or not the evidence is reasonably available, but for some unexplained reason, the alien simply didn't present it? Well, I think that's just about it, Your Honor. Do you agree with me that that distinguishes SIDHU? No, I don't think it distinguishes SIDHU, because in SIDHU, they look to Mahia Payens for determining what was reasonably available. And the same situation is here. I thought the immigration judge here said, you know, this information should be available from Iran, which is a relatively open society. Well, he said it was not a closed society. He didn't say it was relatively open. He simply said it was not a closed society. And the evidence of record does not contradict that. I mean, Iran, the country report evidence in Iran does not suggest that the evidence that this immigration judge was looking for is not reasonably available. They're talking about birth records, death records, and employment records. There's no evidence in this record that Iran is the type of society where those records are not reasonably available. I'm not trying to beat up on you personally. And if my questions seem a little sharp, it's only because I'm a little perturbed at the immigration service here. But the immigration judge essentially said he thought you ought to be able to go to Iran and get a death certificate for the daughter who disappeared after she was taken away by the Ayatollah's secret police. And we think she's dead, but they wouldn't even return the corpse to her. And the IGA then says she should have been able to go and get a death certificate? I mean, don't you think that's a little far-fetched speculation? I don't think it's far-fetched speculation at all. I mean, passing aside the death certificate, which I'm going to get to, I mean, there's no evidence that Iran doesn't have birth records. That was one of the other problems. The immigration judge wasn't sure that this person existed and wanted a birth certificate. The petitioner was able to get a certificate regarding her own. I don't know that it was a birth certificate, but it may well have been from Iran because it was submitted in the record from Iran. Employment records. There's no evidence to indicate that they're unemployment records. Death records. There's no evidence. There are no death certificates. If you believe her testimony, which the immigration judge did not, there's no reason to believe that a death certificate wasn't prepared and that those death records are available. This is SIDHU four square. Okay. Mr. Bernstein, you're well over your time. Unless Judge Thomas, any other questions for Judge Nelson? Thank you. Thank you, Mr. Bernstein. Your Honors, I'm going to try and make four quick points in the two minutes I have left. This Court did note in SIDHU, and actually, Judge Silverman, I believe you were on that panel, that the information not only has to be reasonably available, easily available, easily available, non-duplicative and material, and there has to be an explanation for the failure to produce it. This Court has held in every case since SIDHU that information outside the United States is almost never easily available. Judge Tolman, your observation that expecting a death certificate from women when the corpse hadn't been provided is exactly right. But, for example, the judge said, where are the letters from siblings? There were no siblings in Iran. Presumably he meant her children. She explained, I'm illiterate. That is a reasonable explanation that was never addressed by the immigration judge. The failure to address her explanations is legal error, not factual error, but legal error. So when you apply an easily available, non-duplicative material standard here, there is no substantial evidence for the individual findings and a failure to address the explanation which constitutes legal error. I think the judge said that Iran was not such a closed society. That's speculation and conjecture. There was no evidence. Osorio makes clear, speculation and conjecture will never be substantial evidence. I think it was the government that described Iran as a fairly normally operating society. I'm not sure whose definition of normally is applying, but it's certainly no substantial evidence. In the record, the evidence shows that Iran opens people's mail, they listen to telephone conversations without authorization, so any expectation for letters to be sent documenting persecution is not reasonably expected in these circumstances. Your Honor's inquired about the practical effect of what happens. I twice, actually three times, contacted OIL, asking them to stipulate to a remand, because we can prove this case. I'll admit, I'll be the first one to admit, the lawyering below was not a model of good lawyering. But Mrs. Mansourian's story is not made up. It's very true, and we're pleased. We'd be happy to prove it. I don't think we have to, because I think that the evidence that was introduced, including the country reports and the State Department's own reports, substantiate her claim, her testimony, which was consistent and never rebutted. But we are pleased to go and prove her case and we'd be proud to do so. This is a case where what happens? Mrs. Mansourian may never be removed. In fact, Mr. Bernstein's supervisor told me, What's the big deal? She's never going to get deported to Iran. Well, the big deal is that this woman lives with the fear of removal. The big deal is that this woman, who testified about the discomfort just thinking about her daughter's death and had difficulty providing a date, she said, My heart is in discomfort. The interpreter said, Your Honor, she's suffering. This is a woman who's suffering every time she thinks about what happened. And to live out her final days under the threat of removal and to not have that peace that these refugee laws were designed to afford. Madam Chen recognizes sometimes persecution is so severe we don't even look to whether there's a well-founded fear. Just two more quick points. Your time is up, so if you just finish it, we'd appreciate it. I can conclude right now. Thank you, Your Honor. Thanks to both counsel and especially you, Ms. Weitzman, for taking this case on a pro bono basis. We appreciate that very much. Thank you. The case just argued is submitted. Well, Mr. Bernstein, before you go, Ms. Weitzman, where are we on the mediation thing? Are you interested in exploring that or do you want us to decide the case right away? Well, Your Honor, I'm not so sure I understand what you're asking. So let's, I mean, if you wouldn't mind explaining exactly what you'd like me to do. I'm curious whether you and Ms. Weitzman want to get together either with a mediator or otherwise to see if there's some I will If it pleases the court It tickles the court Let me suggest that I would be very pleased if you would make that effort Let me finish and then we'll see if you're tickled Obviously, I need to go back and explain to the people who tell me what to do aside from this court what the court has requested and I certainly will make that effort and if they tell me that we should comply with the court's wishes as opposed to an order then I'm happy to I don't make anybody mediate or doesn't want to mediate just so you know where I stand on it but on the other hand if you think it's to your advantage to talk about it and I just wanted to ask you how long do you think it would take you to get back to us on that? A couple weeks? Yeah, 14 days I'm sure would be fine When you go back to your superiors I'm sure you'll tell them this but you're dealing here with a very reasonable panel that tries to follow the law and if you're getting any messages at all from the panel this is the case that we think you ought to mediate I understand That's all you need to tell them Understood I guess I'm a little unclear as well what the mediation would entail Well maybe a stipulated reopening In other words you get together with a mediator from our court, a neutral and the parties have their discussion with the mediator and come to some agreeable resolution and 99.99% of the time we'll agree if the parties agree we don't have any ore in this water I'll tell you in the previous case as I recall we deferred submission for 30 days pending a report from the government lawyer and I think the government lawyer came back saying he needed a little more time and it took about maybe 60 days before it finally worked its way through then it went to mediation and I believe was successfully mediated When I was talking 14 days I thought I was indicating that it would take me 14 days to find out whether or not my bosses would be comfortable with this and then get back to you with Ms. Weitzman not for the whole mediation to be over That was just to get through the bureaucracy not to get the mediation over because it takes a while for these unusual requests to get through the file rooms and so on Your experience indicates that I might need more time than 14 days Thanks again to both of you Thank you The next two cases on the calendar are Babayan vs. Gonzales 0371482 and Gaharian vs. Gonzales 0371851 Those cases are submitted on the briefs at this time The next case then to be argued is 0357248 Astorga vs. Terhune Each side has 10 minutes Morning Let's see Who's for the appellant? Ms. Law Good morning
judges: Tg Nelson, Silverman,tallman